### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ALBERT IBARRA,

    Plaintiff,

vs.                                No.      **CIV - 0 5 - 9 7 9 JH RLP**

BEN RAY LUJAN, E. SHIRLEY BACA,
JASON MARKS, DANIEL MAYFIELD,
RON MARTINEZ, HUGHANNE MAXWELL-LOUX
and THE NEW MEXICO PUBLIC REGULATION
COMMISSION,

    Defendants.                **JURY DEMAND**

FILED

05 SEP 13 PM 2:01

CLERK-ALBUQUERQUE

### COMPLAINT
### FOR CIVIL RIGHTS VIOLATIONS

COMES NOW Plaintiff, Albert Ibarra (hereinafter, Mr. Ibarra), by and through his

attorneys of record, J. Edward Hollington, J. Edward Hollington & Associates, for his

Complaint against the Defendants, states:

### I. JURISDICTION AND VENUE

1.    Plaintiff, Albert Ibarra (hereinafter, Mr. Ibarra), is a resident of Rio Rancho,

    Sandoval County, New Mexico.

2.    The New Mexico Public Regulation Commission (hereinafter, NMPRC) is a

    regulatory commission comprised of five (5) elected members. NMPRC was

    created by New Mexico legislation.

3.    Defendant Ben Ray Lujan is a resident of Santa Fe, Santa Fe County, New

    Mexico.

4.    Defendant E. Shirley Baca is a resident of Las Cruces, Dona Ana County, New

    Mexico.

5.    Defendant Jason Marks is a resident of Albuquerque, Bernalillo County, New

    Mexico.

6.    Defendant Danny Mayfield is a resident of Santa Fe, Santa Fe County, New Mexico.

7.    Defendant Ron Martinez is a resident of Santa Fe, Santa Fe County, New Mexico.

8.    Defendant Hughanne Maxwell-Loux is a resident of Santa Fe, Santa Fe County, New Mexico.

9.    All acts and occurrences pertinent to this action occurred in Santa Fe County, New Mexico.

10.   This Court has jurisdiction over the parties and subject matter, and venue is properly before this Court.

## II. STATEMENT OF FACTS

11.   Plaintiff, Mr. Ibarra, was employed as Bureau Chief of Compliance, Transportation Division, New Mexico Public Regulation Commission (hereinafter, NMPRC), from June 19, 2004 until May 20, 2005.

12.   Mr. Ibarra had been employed with NMPRC for 11 years in various positions, and an additional six years with other New Mexico State government agencies.

13.   During Mr. Ibarra's employment with NMPRC, he held classified positions under the New Mexico State Personnel Rules and Regulations, except for five years when he held an exempt position as Executive Assistant to NMPRC Commissioner Herb Hughes (January, 1999 - June 2004).

14.   In June of 2004, Mr. Ibarra returned to a classified position as Bureau Chief of Compliance, and he held that position for almost one year.

15.   NMPRC is a state regulatory agency comprised of five elected commissioners.

16.   Defendant Ben Ray Lujan is an elected NMPRC Commissioner from District 3, and he currently serves as Chairman of NMPRC. His term as Commissioner began January 1, 2005.

17.   Defendant Jason Marks is an elected NMPRC Commissioner from District 1, and currently serves as Vice-Chairman of NMPRC. His term began January 1, 2005.

18.   Defendant E. Shirley Baca is an elected NMPRC Commissioner from District 5, and her term ends December 31, 2006.

19.   Defendant Danny Mayfield was appointed Chief of Staff by NMPRC Commission in early January of 2005.

20.   Defendant Ron Martinez is the Transportation Division Director of NMPRC.

21.   Defendant Hughanne Maxwell-Loux, at all times material to this matter, was and is the Director of Human Resources for NMPRC.

22.   Defendants Ben Ray Lujan, Jason Marks, and E. Shirley Baca are members of the Democratic Party, and when Defendant Ben Ray Lujan and Jason Marks' assumed office on January 1, 2005, the Commission was then comprised of four Democrats and one Republican Commissioner.

23.   Defendant Jason Marks predecessor-commissioner was Herb Hughes who served two terms (six years) as the elected Commissioner from District 1. Commissioner Hughes was a member of the Republican Party during his term as a Commissioner of NMPRC.

24.   Plaintiff, Mr. Ibarra, had been appointed Executive Assistant to Commissioner Hughes until he resigned that position in May of 2004 to assume the position of Bureau Chief of Compliance, Transportation Division.

25.   Political allegiance/association is not required or inherent in the position of Bureau Chief of Compliance.

26. As Bureau Chief of Compliance, Mr. Ibarra's duties included supervision and management of a bureau charged with investigating and evaluating motor carrier applications, renewals, audits, inspections, and processing of applications for Certificates and Contract Motor Carrier Permits. Transportation businesses subject to regulation by NMPRC cannot legally operate in New Mexico without authority from NMPRC.

27. Mr. Ibarra's direct supervisor was Defendant Ron Martinez. Ron Martinez's direct supervisor was Defendant Danny Mayfield (Chief of Staff), and Danny Mayfield reported directly to the NMPRC.

28. A majority vote (at least three votes) is required for NMPRC action.

29. During Mr. Ibarra's employment as Bureau Chief of Compliance, he attempted to follow State law, rules, and regulations in carrying out his duties.

30. Mr. Ibarra discovered several instances of illegal, improper, and unethical conduct in the Transportation Division. He reported verbally and in writing to his superiors about the following occurrences:

   1) Failure of the Division (Transportation) to follow statutes and new transportation rules regarding applications and checklists;

   2) Failure of the Division to follow statutes regarding the collection of enterprise fund fees from all regulated transportation carriers.

   3) Defendant E. Shirley Baca engaged in ex-parte discussions with licensees who had matters pending before NMPRC;

   4) Defendant Ron Martinez ordered Plaintiff to upgrade several employees' Development Appraisals when those employees lacked basic skills required for proper job performance;

-4-

5)   An investigator failed to inspect licensee businesses, premises, and equipment, and misrepresented on reports that the inspectors had conducted on-site safety and compliance inspections.

6)   Falsification of time reports, where employees were conducting personal business, yet receiving full State pay at the same time.

7)   Falsification of investigation report by an employee in the Bureau and disregard for rules and regulations.

8)   Employee of the Bureau allowed licensee applicants to write their own NMPRC staff recommendations which were then presented for Commission review and approval resulting in rate increases.

9)   Selective and arbitrary enforcement of regulatory action.

10)  Failure to carry out enforcement actions for obvious violations, and misrepresenting violations where none existed against selected licensees.

11)  Failure to take action to assure compliance and enforcement of motor carriers' insurance requirements.

12)  Failure to comply with overtime policies in accordance with Human Resources Policies and Procedures.

13)  Failure to comply with the formal complaint process per Human Resources Policies and Procedures.

31.   In November of 2004, after the results of the general election were known, Mr. Ibarra heard that the incoming new Democrat Commissioners, Defendant Ben Ray Lujan and Jason Marks, together with Defendant E. Shirley Baca, intended to get rid of Plaintiff because of his political association with former Commissioner Herb Hughes (Republican).

32.   In March of 2005, Mr. Ibarra received information from a credible source that an employee in the Bureau had solicited a bribe of $10,000.00 from an applicant for a Motor Carrier Certificate. Mr. Ibarra prepared a written report to Defendant Ron Martinez reciting the evidence he received, and Mr. Ibarra requested an independent investigation.

33.   Soon after the new Commissioners took office (Defendants Lujan, Marks), Mr. Ibarra began to receive threats, intimidation, and harassment because of his reports of improper, illegal, and unethical conduct.

34.   In early March of 2005, Mr. Ibarra sent a written request to Defendant Lujan, Chairman of the NMPRC, requesting commission assistance in preventing retaliatory conduct against him because of his reports.

35.   Defendant Lujan did not respond to Mr. Ibarra's letter and request for protection from retaliation.

36.   On or about December 13, 2004, Mr. Ibarra received his Employee Development Appraisal. The evaluation characterized Mr. Ibarra's job performance as successful and exceptional.

37.   Defendants Hughanne Maxwell-Loux, Martinez, and Mayfield wrongfully removed Mr. Ibarra's Employee Development Appraisal form from his personnel file, and inserted three letters, one dated April 12, 2005, from Defendant Maxwell-Loux; a second letter dated April 22, 2005, addressed to Defendant Loux-Maxwell; and a third letter from Defendant Martinez to Defendant Mayfield dated May 17, 2005. The three letters were placed in Mr. Ibarra's personnel file in violation of New Mexico Personnel Rules and Regulations (NMAC § 1.7.12A), and contained derogatory, defamatory, and misleading information. Pursuant to State Personnel Rules and Regulations, the three letters are available for review and

inspection by other state agencies who might consider Plaintiff, Mr. Ibarra, for future employment.

38. Mr. Ibarra was born in Mexico. After Mr. Ibarra reported improprieties and an attempted bribe to his superiors, a subordinate employee said to another subordinate while Mr. Ibarra was present, "My dad always told me never to give authority to Mexicans because it will go to their heads." Mr. Ibarra reported this racial slur to his supervisor, but no action was taken. Mr. Ibarra was called other derogatory names by employees in the department.

39. On May 19, 2005, Mr. Ibarra filed a Charge of Discrimination, based on race, national origin, and retaliation, with the EEOC as Charge No. 390-2005-001552.

40. Prior to Mr. Ibarra learning of his termination, he sent an e-mail message to his direct supervisor, Defendant Ron Martinez, informing Mr. Martinez that he (Mr. Ibarra) had filed a Charge of Discrimination with the EEOC. Within a few hours of Mr. Martinez learning that Mr. Ibarra had filed an EEOC Complaint, Mr. Martinez issued a letter of termination to Mr. Ibarra. Mr. Ibarra filed an Amended Charge with the EEOC on June 2, 2005, including his termination as an additional act of retaliation.

41. Prior to his termination, no disciplinary action was taken against Mr. Ibarra while he worked as a Bureau Chief with NMPRC.

42. Mr. Ibarra's verbal and written reports of improper, illegal, and unethical conduct within NMPRC were about matters of public concern.

43. On May 20, 2005, Defendants, without notice or warning, fired Mr. Ibarra within one month of his completion of his one-year anniversary (probationary) period under New Mexico State Personnel Rules and Regulations.

44. Mr. Ibarra has no administrative remedies under State Personnel Rules and Regulations to contest the abrupt termination.

45. The Defendants herein were final decision makers regarding the terms and conditions of Mr. Ibarra's employment.

46. The Defendants' conduct was done under color of state law.

47. The Defendants' actions in terminating Plaintiff's employment was substantially motivated in part because of Mr. Ibarra's protected speech, political association, discrimination and retaliation.

48. Mr. Ibarra received his Notice of Right to Sue Letter from the EEOC on August 25, 2005, and an Order of Non-Determination from the New Mexico Human Rights Department (HRD) on or about September 8, 2005. Mr. Ibarra has satisfied all statutory prerequisites for bringing his claims of discrimination/ retaliation under 42 U.S.C. § 2000(e), and the New Mexico Human Rights Act.

49. Mr. Ibarra has lost income, plus benefits (back pay, front pay), and other compensatory damages as a proximate result of the Defendants' retaliatory and discriminatory conduct.

50. The Defendants' conduct amounts to malicious, wanton, intentional, and reckless disregard for Plaintiff's protected rights.

51. Mr. Ibarra caused a timely tort claim notice to be mailed to Defendants and State Risk Management as required by the New Mexico Tort Claims Act.

52. Mr. Ibarra has incurred attorney fees and costs in bringing this action.

## COUNT I
## 42 U.S.C. § 1983 (Speech)

53. Plaintiff realleges the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.    Mr. Ibarra engaged in protected activity when he spoke and wrote about matters of public concern.

55.    Mr. Ibarra's speech was a substantial motivating factor in the individual Defendants' act of terminating his employment.

56.    Mr. Ibarra's interest in engaging in protected speech outweighs the individual Defendants' interest in regulating such speech.

57.    As a proximate result of the individual Defendants' retaliatory conduct, Mr. Ibarra has lost income, plus benefits (back pay, front pay), and other compensatory damages to be proven at trial.

58.    The individual Defendants' conduct amounts to willful, wanton, malicious, and reckless disregard for Mr. Ibarra's protected rights.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his behalf and against the individual Defendants, jointly and severally, and award him damages for loss of income and benefits (back pay, front pay), compensatory damages, punitive damages, attorney fees and costs, pre-judgment/post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT II
## 42 U.S.C. § 1983 (Political Association)

59.    Plaintiff realleges the allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.    Mr. Ibarra's political association was a substantial or a motivating factor in the individual Defendants' decision to terminate his employment.

61.    Political allegiance was not a requirement of Plaintiff's job as Bureau Chief.

62.    As a proximate result of the individual Defendants' retaliatory conduct, Mr. Ibarra has lost income, plus benefits (back pay, front pay), and other compensatory damages to be proven at trial.

63.    The individual Defendants' conduct amounts to willful, wanton, malicious, and

reckless disregard for Mr. Ibarra's protected rights.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his

behalf and against the individual Defendants, jointly and severally, and award him

damages for loss of income and benefits (back pay, front pay), compensatory damages,

punitive damages, attorney fees and costs, pre-judgment/post judgment interest, and

such other and further relief as the Court deems just and appropriate.

### COUNT III
### Discrimination in Violation of 42 U.S.C. 2000(e), et seq.

64.    Plaintiff realleges the allegations contained in paragraphs 1 through 63 of this

Complaint as if fully set forth herein.

65.    Mr. Ibarra, being of Mexican decent, is a member of a protected category under

42 U.S.C. § 2000(e), et seq.

66.    Mr. Ibarra was qualified for the position he held with NMPRC.

67.    Mr. Ibarra was subjected to slurs and derogatory comments referencing his

nationality (Mexican).

68.    Defendant NMPRC's decision, through its agents and individual defendants

named herein, to terminate Mr. Ibarra's employment was motivated in part by his

protected status.

69.    As a proximate and direct result of Defendant's discriminatory conduct, Mr. Ibarra

has lost income, plus benefits (back pay, front pay), and other compensatory

damages to be proven at trial.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his

behalf, and against the Defendant, NMPRC, and award him damages for loss of income

and benefits (back pay, front pay), compensatory damages, attorney fees, costs, pre-

judgment/post-judgment interest, and for such other and further relief as the Court

deems just and appropriate.

## COUNT IV
### Retaliation in Violation of 42 U.S.C. § 2000(e), et seq.

70.     Plaintiff realleges the allegations contained in paragraphs 1 through 69 of this

Complaint as if fully set forth herein.

71.     Mr. Ibarra engaged in protected activity when he objected to employees making

racial/nationality slurs against him.  He also engaged in protected activity when

he filed a charge of discrimination with the EEOC/New Mexico Human Rights

Department (HRD).

72.     Defendant NMPRC, through its agents and employee/defendants named herein,

terminated Mr. Ibarra's employment.  The decision to terminate Mr. Ibarra's

employment was motivated in part because of his objections to discriminatory

statements made against him, and his filing of an EEOC/HRD charge.

73.     As a proximate result of Defendant's retaliatory conduct, Plaintiff has lost income,

plus benefits (back pay, front pay), and other compensatory damages to be

proven at trial.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his

behalf, and against the Defendant, NMPRC, and award him damages for loss of income

and benefits (back pay, front pay), compensatory damages, attorney fees, costs, pre-

judgment/post-judgment interest, and for such other and further relief as the Court

deems just and appropriate.

## COUNT V
### Discrimination and Retaliation in Violation of the New Mexico Human Rights Act

74.     Plaintiff realleges the allegations contained in paragraphs 1 through 73 of this

Complaint as if fully set forth herein.

75.    Conduct specified in the foregoing counts (Counts III and IV) also constitute

violations of the New Mexico Human Rights Act.

76.    As a proximate result of Defendant's discriminatory and retaliatory conduct,

Plaintiff has lost income, plus benefits (back pay, front pay), and other

compensatory damages to be proven at trial.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his

behalf, and against the Defendant, NMPRC, and award him damages for loss of income

and benefits (back pay, front pay), compensatory damages, attorney fees, costs, pre-

judgment/post-judgment interest, and for such other and further relief as the Court

deems just and appropriate.

### COUNT VI
### 42 U.S.C. § 1983 (Liberty Interest)

77.    Plaintiff realleges the allegations contained in paragraphs 1 through 76 of this

Complaint as if fully set forth herein.

78.    Defendants Mayfield, Martinez, and Maxwell-Loux have made verbal and written

statements that impugn the good name, reputation, honor and integrity of

Plaintiff.  Defendants placed such written statements in Plaintiff's personnel file

during the course of terminating his employment, and for the purpose of

foreclosing other employment opportunities for Plaintiff.

79.    Defendants' statements were false.

80.    The statements were placed in Plaintiff's personnel file in violation of State

Personnel Rules and Regulations.  The statements have been published to third

parties, and in particular, to other state agencies considering Plaintiff for

employment.

81.    As a proximate result of Defendants' conduct, Plaintiff has lost income, including back pay, front pay, loss of prospective job opportunities, experienced humiliation, embarrassment, and loss of his reputation.

82.    The Defendants' conduct constitute willful, wanton, malicious, and reckless disregard for Plaintiff's protected rights.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against the Defendants, Mayfield, Martinez, and Maxwell-Loux, jointly and severally, and award him damages for loss of income and benefits, back pay, front pay, and benefits compensatory damages, attorney fees, costs, pre-judgment, post-judgment interest, punitive damages, and for such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

J. EDWARD HOLLINGTON & ASSOCIATES, P.A.

By: _____
        J. Edward Hollington
Attorney for Plaintiff
708 Marquette Avenue N.W.
Albuquerque, NM 87102-2035
(505) 843-9171
(505) 843-7027 (fax)